

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> LOGAN FRANK BUSSA <br><br> Defendant. | No. 3:25-mj-00707-MMS |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Phillip York, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that LOGAN FRANK BUSSA (the SUBJECT) has committed the following federal criminal offenses: 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Distribution of a Controlled Substance); 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Possession with Intent to Distribute Controlled Substances) and 18 U.S.C. § 922(g) and 924(a)(8) (Felon in Possession of Firearms).

2. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since August 2023 when I attended New Agent's Training in Quantico, Virginia. Following my graduation from New Agent's Training, I was assigned to the Anchorage FBI Field Office

on the Counterintelligence squad and now serve on the Violent Crimes squad. As part of my FBI duties, I investigate criminal violations of federal law, to include federal sex trafficking and prostitution offenses, racketeering offenses, and the Controlled Substances Act. Throughout my law enforcement career, I have received training in the enforcement of federal law. My training and experience have involved, among other things: (1) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the criminal activity and of the laundering and concealment of proceeds of criminal activity; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the execution of search warrants. I have assisted in the investigation of narcotics cases ranging in scope from street level distributors to multi-state international complex conspiracy cases to include, drug related matters, local and national gang investigations, and violent crimes against children. Prior to becoming a Special Agent, I served as a Marine Corps Intelligence Officer where I conducted production and analysis on regional national security threats.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included each and every fact known to me concerning this investigation.

**FACTS ESTABLISHING PROBABLE CAUSE**

4. This investigation concerns a drug trafficking organization (DTO) known to be involved in transporting large quantities of various narcotics, including fentanyl, cocaine,

*U.S. v. Bussa*
3:25-mj-00707-MMS  Page 2 of 12
Case 3:25-mj-00707-MMS    Document 3-1    Filed 11/04/25    Page 2 of 12

and methamphetamine to and within the State of Alaska. The following information is based on my own knowledge, from other law enforcement agents and officers, or from specific sources as set forth, it does not represent every fact, only the most significant facts of the investigation thus far.

5. The Affiant, along with other state, local, and federal law enforcement officers, are investigating a drug trafficking organization being operated in Anchorage, Alaska by the SUBJECT, and his associates.

6. On May 17, 2024, the Anchorage High Intensity Drug Trafficking Area (HIDTA) squad comprised primarily of federally deputized task force officers from Anchorage Police Department (APD) and Federal Agents from the Federal Bureau of Investigation (FBI) and Drug Enforcement Administration (DEA) with the assistance of other local and federal law enforcement partners conducted a controlled purchased of drug evidence from the SUBJECT. In this operation, a Confidential Human Source (CHS), under the direction of investigators, met with the SUBJECT during a video recorded and surveilled meeting in Anchorage. Prior to the meeting, the CHS was searched for any contraband. Investigators were able to confidently confirm the CHS did not have any drugs or contraband.

7. The CHS and SUBJECT had multiple recorded calls prior to the operation. SUBJECT used the phone number 907-XXX-8395. The CHS was equipped with an audio/video recording device. The CHS was given government-provided funds to purchase drug evidence and was followed to a predetermined location under surveillance. During the operation, the SUBJECT was observed parking, exiting the 2005 gray Cadillac

*U.S. v. Bussa*
3:25-mj-00707-MMS        Page 3 of 12
Case 3:25-mj-00707-MMS    Document 3-1    Filed 11/04/25    Page 3 of 12

SRX bearing Alaska license plate "KFL507" and VIN IGYEE637250107152 (SUBJECT VEHICLE 1) and entering the CHS VEHICLE.

8. During the meeting, the SUBJECT provided the CHS with fentanyl in exchange for $700. The CHS asked the SUBJECT if they could purchase "a piece." The SUBJECT responded, "I know where there's a little .380 for sale [... ] It's in my collection [... ] Um, I got it [...] Give a minute to think of what I paid for it." After the transaction, the SUBJECT was observed exiting the CHS VEHICLE, returning to SUBJECT VEHICLE 1 and departing the parking lot. The CHS was then followed back to a predetermined meeting location. After the operation, the CHS provided investigators with the drug evidence and was searched again for any contraband which yielded a negative result. The recording devices were deactivated and entered into evidence along with the drug evidence which tested positive for fentanyl in Drug Enforcement Agency laboratory analysis. The results of the laboratory analysis showed an amount of 6.249 grams of a mixture containing fentanyl.

9. On May 23, 2024, the Anchorage HIDTA squad with the assistance of other local and federal law enforcement partners conducted a controlled purchase of drug evidence from the SUBJECT. In this operation, the CHS, under the direction of investigators, met with the SUBJECT during a video recorded and surveilled meeting in Anchorage. Prior to the meeting, the CHS was searched for any contraband. Investigators were able to confidently confirm the CHS did not have any drugs or contraband.

10. The CHS and the SUBJECT had multiple recorded calls prior to the operation. The SUBJECT used the phone number 907-XXX-8395. The CHS was equipped with an

*U.S. v. Bussa*
3:25-mj-00707-MMS            Page 4 of 12
Case 3:25-mj-00707-MMS    Document 3-1    Filed 11/04/25    Page 4 of 12

audio/video recording device. The CHS was given government-provided funds to purchase drug evidence and was followed to a predetermined location under surveillance. During the operation, the CHS was observed parking, exiting their vehicle and entering SUBJECT VEHICLE 1. During the meeting, the SUBJECT provided the CHS with fentanyl in exchange for $2,400. After the transaction, the SUBJECT was observed departing the parking lot. The CHS was then followed back to a predetermined meeting location. After the operation, the CHS provided investigators with the drug evidence and was searched again for any contraband which yielded a negative result. The recording devices were deactivated and entered into evidence along with the drug evidence which tested positive for fentanyl in Drug Enforcement Agency laboratory analysis. The results of the laboratory analysis showed an amount of 25.3 grams of a substance containing a detectable amount of fentanyl.

11. On July 17, 2024, the Anchorage HIDTA squad with the assistance of other local and federal law enforcement partners conducted a controlled purchase of drug evidence from Brandon GARRETT (GARRETT) and Marcelino JUAREZ (JUAREZ). In this operation, the CHS, under the direction of investigators, met with GARRETT and JUAREZ during a video recorded and surveilled meeting in Anchorage. Prior to the meeting, the CHS was searched for any contraband. Investigators were able to confidently confirm the CHS did not have any drugs or contraband.

12. The CHS and GARRETT had multiple recorded calls prior to the operation. GARRETT used the phone number 907-XXX-2734. The CHS was equipped with an audio/video recording device. The CHS was given government-provided funds to purchase

*U.S. v. Bussa*
3:25-mj-00707-MMS   Page 5 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 5 of 12

drug evidence and was followed to a predetermined location under surveillance. During the operation, the CHS was observed parking, exiting their vehicle and entering a black Audi with Alaska license plate JKM 173.

13. The CHS greeted GARRETT who sat in the front passenger seat and JUAREZ in the driver seat. During the meeting, GARRETT and JUAREZ provided the CHS with fentanyl in exchange for $6,000. After the transaction, the CHS was observed exiting the black Audi with Alaska license plate JKM173, entering the CHS VEHICLE and departing the parking lot. The CHS was then followed back to a predetermined meeting location. After the operation, the CHS provided investigators with the drug evidence and was searched again for any contraband which yielded a negative result. The recording devices were deactivated and entered into evidence along with the drug evidence which tested positive for fentanyl in Drug Enforcement Agency laboratory analysis. The results of the laboratory analysis showed an amount of 75.4 grams of a mixture containing fentanyl. Surveillance personnel continued surveillance of GARRETT and JUAREZ back to JUAREZ's residence in Anchorage at 100 McCarrey St., Space 1A at approximately 6:24 PM. GARRETT and JUAREZ then left the residence at approximately 6:25 PM and were kept under surveillance.

14. Earlier on July 17, 2024, the CHS had a consensually recorded call with the SUBJECT at phone number 907-XXX-8395. During the phone call which took place at approximately 12:48 PM, the SUBJECT said he could get "3 pieces" that were "fire." The SUBJECT then stated he would "call Old Boy and have it set up." The CHS and the

*U.S. v. Bussa*
3:25-mj-00707-MMS　　　　　　　　　Page 6 of 12
Case 3:25-mj-00707-MMS　　Document 3-1　　Filed 11/04/25　　Page 6 of 12

SUBJECT agreed to meet at around 6:45 PM. At the end of the conversation the CHS and the SUBJECT agreed to the sale of 3 ounces of fentanyl for $6,300.

15. Surveillance personnel observed GARRETT and JUAREZ arrive at 5016 E 24th Avenue, Anchorage, AK 99508 (the SUBJECT RESIDENCE) at approximately 6:33 PM. JUAREZ was observed exiting his car and entering the SUBJECT RESIDENCE.

16. At approximately 6:34 PM the SUBJECT called the CHS from 907-XXX-8395 and stated, "It's here." The SUBJECT called the CHS at approximately 6:41 PM and stated, "Can I bring them? I have them on me. Can I bring them to you?" The CHS was instructed to cancel the transaction out of an abundance of caution.

17. On September 26, 2024, FBI surveillance footage first observed an older model white minivan with a black rectangle on the driver side front bumper arrive at the SUBJECT RESIDENCE. A white male adult similar in size and appearance to the SUBJECT exited the vehicle and walked to the back of the SUBJECT RESIDENCE. The same individual presumed to be the SUBJECT was observed a second time on September 26, 2024, arriving in the vehicle and entering the front of the SUBJECT RESIDENCE. The vehicle was observed arriving to the SUBJECT RESIDENCE multiple times throughout September 2024 and October 2024.

18. On October 8, 2024, the vehicle was identified as a 1993 White Dodge Caravan bearing Alaska license plate "LNE7S8" and VIN number 2B4GK4SR3PR300104 (SUBJECT VEHICLE 2). The Alaska DMV database returned SUBJECT VEHICLE 2 as registered to Jonathan Edward Davic at 7367 South Rubacaba Street, Wasilla, Alaska.

*U.S. v. Bussa*
3:25-mj-00707-MMS  Page 7 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 7 of 12

SUBJECT VEHICLE 2 was last observed by surveillance camera on October 10, 2024, when two individuals exited the SUBJECT RESIDENCE and entered the vehicle departing at 10:02 PM.

19. On October 10, 2024, at approximately 11:28 PM, Anchorage Police Department Patrol attempted a traffic stop of SUBJECT VEHICLE 2 near East 22nd Avenue and Boniface Parkway for suspicion of a reported kidnapping. The occupant of the vehicle threw out a black container while eluding an Anchorage Police Officer. After attempting to disable the moving vehicle by pit maneuver, the Officer was facing the driver's side of the minivan and observed the front seat vehicle occupants. The driver appeared to be a heavy-set white male adult with glasses and a dark colored neck beard. The male was wearing a flat bill baseball cap and a flannel shirt with what appeared to be a dark colored hoodie sticking out of the back. This description is of similar appearance to the SUBJECT. There also appeared to be a white or Native female passenger that was wearing a white jacket. The Officer discontinued following the vehicle near Boniface Parkway and Compassion Circle while SUBJECT VEHICLE 2 traveled the wrong way northbound on Boniface Parkway.

20. Upon inspection by APD officers, it was discovered that the black container held suspected controlled substances. The suspected controlled substances were seized as evidence by APD. The contents of the container were three baggies containing a white powdery substance consistent with cocaine that had a total weight of 35.2 grams when weighed with the baggies. The three baggies of cocaine all field tested presumptive positive for cocaine. Two other bags seized from the container held a clear, crystalline grain

*U.S. v. Bussa*
3:25-mj-00707-MMS   Page 8 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 8 of 12

structure substance consistent with methamphetamine, weighing in at 22.8 grams when weighed in the baggies containing the drugs. The Officer did not possess a field test kit for methamphetamine. The collected evidence was submitted to Anchorage Police Department. A different white van was later found to be associated with the kidnapping.

21. On October 25, 2024, pursuant to federal search warrant 3:24-mj-00586-KFR, the SUBJECT RESIDENCE was searched by law enforcement. The SUBJECT occupied the lower floor, and the SUBJECT's mother, Sonya BUSSA, occupied the upper floor. At the time of the search, Joshua NIDA, Devon MARQIESE, Holli HARRISON, Jessica BECK, and Amber TELLO were also present in the lower floor. During the execution of the search warrant at the SUBJECT RESIDENCE, investigators seized suspected methamphetamine, heroin, cocaine and fentanyl. Photographs were also taken of multiple scales, plastic bags, and other common packaging implements used in drug distribution.

22. Controlled substances were found in all three bedrooms and the bathroom of the lower floor where the SUBJECT resided. The drug evidence was sent to the DEA lab for further analysis. The combined results of the laboratory analysis showed total weights of approximately 101.112 grams of confirmed methamphetamine, with a minimum purity of 99% +/- 7%, 11.004 grams of a substance containing heroin, 29 grams of a substance containing cocaine, and 63.246 grams of a substance containing fentanyl.

//

//

*U.S. v. Bussa*
3:25-mj-00707-MMS Page 9 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 9 of 12

23. Of the drugs seized from the SUBJECT residence, 69.896 grams of methamphetamine, with a minimum purity of 99% +/- 7%, and 60.287 grams of a substance containing fentanyl were seized from the SUBJECT's bedroom.

24. During the same October 25, 2024 search, law enforcement also seized from the SUBJECT RESIDENCE a Glock 29 handgun, Serial No. BYDH426, which was later identified as stolen; a Glock 20 handgun, Serial No. BWZX374, which was later identified as stolen; and a Smith and Wesson MP9 Shield handgun, Serial No. JCJ1677. All three firearms were seized from lower floor bedrooms where methamphetamine, cocaine, and fentanyl were found. The Glock 29 handgun, and the Glock 20 handgun were located in the SUBJECT's room.

25. The SUBJECT has multiple felony convictions. In 2015 the SUBJECT was convicted of a felony for Controlled Substance 4 - Possession of Schedule II Substance in State of Alaska Case No. 3AN-15-7445, a 2013 felony conviction for Controlled Substance 4 - Possession of Schedule IA or IIA Substance in State of Alaska Case No. 3AN-13-11661, a 2008 felony conviction for Burglary 1- In a Dwelling in State of Alaska Case No. 3AN-08-3521, a 2004 felony conviction for Forgery 2 in State of Alaska Case No. 3AN-04-1437, a 2004 felony conviction for Theft 2 - in State of Alaska Case No. 3AN-04-9S4, and two felony convictions in 2004 for Burglary 1- In a Dwelling in State of Alaska Case No. 3AN-04-1580. Based on criminal history, the SUBJECT is prohibited from possessing firearms.

//

//

*U.S. v. Bussa*
3:25-mj-00707-MMS　　　　　　　　　Page 10 of 12
Case 3:25-mj-00707-MMS　　Document 3-1　　Filed 11/04/25　　Page 10 of 12

26. The CHS was recruited by the FBI and HIDTA and has participated in this investigation for monetary compensation. The CHS knows the SUBJECT from serving time in prison with the SUBJECT. Information provided by the CHS has been corroborated through recordings and controlled drug purchase operations conducted with the SUBJECT in this investigation, and such information has proven to be truthful.

27. The CHS's criminal history consists of a 2021 felony conviction for Misconduct Involving Controlled Substance 3, a 2019 misdemeanor conviction for Violating Conditions Of Release, a 2018 misdemeanor conviction for Violating Conditions Of Release, a 2018 misdemeanor conviction for Violating Conditions Of Release, a 2019 felony conviction for Misconduct Involving Controlled Substance 2 – Make/Delivery 1+ Gram of Schedule IA substance, a 2016 misdemeanor conviction for Assault 4- Recklessly Injure, a 2012 misdemeanor conviction for Operating Impaired, a 2007 conviction -for Tag Not Assigned / Improperly Attached Registration / License Plate Not Assigned, Driving While License Suspended and Failing for Register a Motor Vehicle, two 2005 misdemeanor convictions for Controlled Substance Use, a 2005 arrest for Probation Violation, a 2005 misdemeanor conviction for larceny, a 2005 misdemeanor arrest for Probation Violation from DUI, a 1991 misdemeanor arrest for Driving Under the Influence of Alcohol, a 1989 misdemeanor conviction for Driving Under the Influence of Alcohol, a 1986 misdemeanor conviction for Damage Property, a 1985 misdemeanor conviction for Negligent Driving, a 1985 misdemeanor conviction for Driving While License Suspended and a 1984 misdemeanor conviction for Dangerous Drugs.

U.S. v. Bussa
3:25-mj-00707-MMS     Page 11 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 11 of 12



## CONCLUSION

28. For the reasons described above, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that LOGAN FRANK BUSSA has committed the offenses described in the attached complaint. Accordingly, I ask the Court to issue the complaint and a warrant for LOGAN FRANK BUSSA's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

*Phillip York*
PHILLIP YORK
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on __November 3, 2025__.

HON. MATTHEW M. SCOBLE
U.S. Magistrate Judge
District Of Alaska

*U.S. v. Bussa*
3:25-mj-00707-MMS  Page 12 of 12
Case 3:25-mj-00707-MMS   Document 3-1   Filed 11/04/25   Page 12 of 12